1  KEITH A. JACOBY, Bar No. 150233
   SCOTT M. LIDMAN, Bar No. 199433
2  HEATHER M. DAVIS, Bar No. 239372
   LITTLER MENDELSON
3  A Professional Corporation
   2049 Century Park East
4  5th Floor
   Los Angeles, CA  90067.3107
5  Telephone:  310.553.0308
   Facsimile:  310.553.5583
6  E-mail: kjacoby@littler.com; slidman@littler.com;
   hdavis@littler.com
7
   Attorneys for Defendants
8  COMERICA BANK, COMERICA
   INCORPORATED AND COMERICA
9  MANAGEMENT COMPANY (erroneously sued as
   COMERICA MANAGEMENT COMPANY, INC.)
10

11            UNITED STATES DISTRICT COURT

12          NORTHERN DISTRICT OF CALIFORNIA

13  NANCY MATHEWS, individually,          Case No. CV 11 1707 HRL
    and on behalf of other members of the
14  general public similarly situated,    [PUTATIVE CLASS ACTION]

15              Plaintiff,                 DEFENDANTS' NOTICE TO
                                           FEDERAL COURT OF REMOVAL
16        vs.                              OF CIVIL ACTION FROM STATE
                                           COURT PURSUANT TO 28 U.S.C.
17  COMERICA BANK, a Texas                 §§ 1332, 1441, AND 1446
    corporation; COMERICA
18  INCORPORATED, a Delaware               [Jurisdiction Pursuant to Class Action
    corporation; COMERICA                  Fairness Act]
19  MANAGEMENT COMPANY, INC., a
    Michigan Corporation; and DOES 1
20  through 100, inclusive,

21              Defendants.

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL                                               Case No.

1  TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE
2  NORTHERN DISTRICT OF CALIFORNIA, PLAINTIFF, AND HER
3  ATTORNEYS OF RECORD:

4      **PLEASE TAKE NOTICE** that Defendants COMERICA BANK ("CB"),
5  COMERICA INCORPORATED ("CI") and COMERICA MANAGEMENT
6  COMPANY (erroneously sued as COMERICA MANAGEMENT COMPANY, INC.,
7  ("CMC") (CB, CI and CMC are collectively referred to herein as "Defendants" or
8  "Comerica") hereby remove the above-captioned action from the Superior Court of
9  the State of California for the County of Santa Clara to the United States District
10 Court for the Northern District of California pursuant to 28 U.S.C. sections 1332(d)
11 (Class Action Fairness Act of 2005 or "CAFA"), 1441(b), and 1446(b) on the
12 following grounds:

13                   **STATEMENT OF JURISDICTION**

14     1.    This Court has original jurisdiction over this action under the
15 Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S.C. section 1332(d). In
16 relevant part, CAFA grants district courts original jurisdiction over class actions filed
17 under federal or state law in which any member of a class of plaintiffs is a citizen of a
18 state different from any defendant, and where the amount in controversy for the
19 putative class members in the aggregate exceeds the sum or value of $5,000,000,
20 exclusive of interest and costs. As set forth below, this case meets all of CAFA's
21 requirements for removal, and is timely and properly removed by the filing of this
22 Notice.

23                        **VENUE**

24     2.    The action was filed in Santa Clara Superior Court. Therefore,
25 this action may be removed to the United States District Court for the Northern
26 District of California pursuant to 28 U.S.C. sections 84(d) and 1441(a).

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL       1.      Case No.

**PLEADINGS, PROCESS AND ORDERS**

3.     On or about February 18, 2011, Plaintiff Nancy Mathews ("Plaintiff"), individually, and on behalf of other members of the general public similarly situated, filed an unverified Class Action Complaint in the Superior Court of the State of California for the County of Santa Clara, entitled *Nancy Mathews, individually, and on behalf of other members of the general public similarly situated v. COMERICA BANK, a Texas corporation; COMERICA INCORPORATED, a Delaware corporation; COMERICA MANAGEMENT COMPANY, INC., a Michigan corporation; and, Does 1 through 100, inclusive,* Case No. 111CV194781 (herein referred to as the "Complaint"). Plaintiff alleges that she was employed by Comerica as an Assistant Banking Center Manager in the State of California, and that the proposed class consists of herself and all other current and former Assistant Banking Center Managers of Comerica who worked within Comerica's Northern California District at any time during the period November 3, 2005 to final judgment. (Complaint, ¶¶ 21, 26).

4.     Plaintiff's Complaint asserts two purported causes of action: (1) Violation of California Labor Code §1194 (Unpaid Minimum and Overtime Wages); and (2) Violation of California Business and Professions Code §§ 17200, *et seq.* The second cause of action for violation of California Business and Professions Code §§ 17200, *et seq.* seeks restitution of wages for various alleged violations, including failure to pay overtime, failure to provide meal and rest periods (and pay the one hour premium owed resulting therefrom), failure to pay minimum wages, failure to timely pay wages upon termination, failure to timely pay wages during employment, failure to provide compliant wage statements, failure to keep complete and accurate payroll records and failure to reimburse necessary business-related expenses and costs. (Complaint, ¶¶ 70-86).

5.     The Complaint, Summons, Civil Lawsuit Notice, Civil Case Cover Sheet and Alternative Dispute Resolution Information Sheet were served upon

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL                    2.                    Case No.

1   Defendants on or about March 9, 2011.  True and correct copies of the Complaint,

2   Summons, Civil Lawsuit Notice, Civil Case Cover Sheet and Alternative Dispute

3   Resolution Information Sheet are attached hereto as **Exhibit A**.

4              6.      On April 4, 2011, Defendants filed an Answer to the Complaint.

5   A true and correct copy of Defendants' Answer to Plaintiff's Class Action Complaint

6   is attached hereto as **Exhibit B**.

7              7.      All of the Defendants join in this Notice of Removal.

8              8.      Since the Doe defendants have not yet been named or served, they

9   need not join or consent to Defendants' notice of removal.  *Salveson v. Western States*

10  *Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir. 1984) (superseded by statute on other

11  grounds, as stated in *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389 (9th Cir.

12  1988) (named defendants not yet served in state court action need not join the notice

13  of removal).  Furthermore, CAFA permits any defendant to unilaterally remove the

14  action if requirements of CAFA for removal are met, as they are here.  *See* 28 U.S.C.

15  § 1453(b).

16             9.      To Defendants' knowledge, no further process, pleadings, or

17  orders related to this case have been filed in Santa Clara Superior Court.

18  **PLEADINGS, PROCESS AND ORDERS IN RELATED CASES**

19             10.     The present action is related to several other pending cases, which

20  are relevant to the removal of this matter as set forth in greater detail below.

21  ***Cordova* Action**

22             11.     Pending before the Honorable Margaret M. Morrow in the United

23  States District Court for the Central District of California ("Central District") is a

24  lawsuit which Defendants removed to the Central District on December 3, 2009 from

25  Los Angeles Superior Court, and which is related to the above-captioned matter.  The

26  matter is entitled *Yiadira Cordova; individually, and on behalf of members of the*

27  *general public similarly situated; vs. Comerica Bank, a Texas corporation, Comerica*

28  *Incorporated, a Delaware corporation, and Comerica Management Company, Inc., a*

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL                                3.                                Case No.

1     *Michigan corporation*, Case No. 09-CV-08905-MMM (PLAx) ("*Cordova* Lawsuit").

2        12.    In the *Cordova* Lawsuit, Cordova, a former Assistant Banking

3 Center Manager employed by Comerica Management Company, primarily alleges that

4 she worked at a Comerica banking center in California and was misclassified as

5 exempt from overtime and was not provided with meal and rest breaks or accurate

6 wage statements. Her lawsuit was filed as a putative class action, and she purports to

7 represent former and current "Assistant Managers" employed by Defendants in the

8 state of California. Cordova also sought remedies under the California Labor Code

9 Private Attorney General Act ("PAGA") on behalf of all other "aggrieved" Assistant

10 Banking Center Managers. A true and correct copy of the First Amended Complaint

11 filed in the *Cordova* Lawsuit is attached hereto as **Exhibit C**.

12        13.    On December 20, 2010, Cordova filed a motion for class

13 certification. (Declaration of Scott M. Lidman ("Lidman Decl."), ¶5.)). Defendants

14 filed their opposition on January 10, 2011. (Lidman Decl., ¶6). On January 25, 2011,

15 prior to the motion for class certification being heard, Cordova withdrew her motion

16 for class certification. (Lidman Decl., ¶7).

17        14.    On February 10, 2011, counsel for Cordova (also counsel for

18 Plaintiff in this action), Gene Williams, advised Defendants' counsel, Scott Lidman

19 the reason that the motion for class certification was withdrawn was that they did not

20 believe that they could obtain class certification in federal court and that they were

21 considering breaking up the class of Assistant Banking Center Managers and filing

22 several actions in state court specifically in order to avoid federal court CAFA

23 jurisdiction. (Lidman Decl., ¶8).

24        15.    On February 15, 2011, Cordova's counsel further explained why

25 they had abandoned the class allegations by sending an e-mail stating that they

26 "believed that it would be a fool's errand to seek certification in **federal court in the**

27 **9th Circuit** where the *Cordova* case is pending." (Lidman Decl., ¶9, and Exhibit 1

28 thereto (emphasis in original exhibit)).

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL            4.               Case No.

16.     Making good on their stated intent to break up the *Cordova* class in a manner intended to avoid federal jurisdiction, Cordova's attorneys thereafter arbitrarily gerrymandered the class of Assistant Banking Center Managers and filed four separate state court actions (the *Gallegos*, *Rumohr*, *Granata* and *Mathews* actions – described in detail below), which allege identical claims against the same Defendants, and differ only with respect to the geographic location of the named Plaintiffs and the classes they purport to represent.  The *Gallegos*, *Rumohr*, *Granata* and *Mathews* Complaints also allege nearly identical class allegations as those encompassed in the original *Cordova* lawsuit.  *See* **Exhibits A, C- F** attached hereto.

***Gallegos* Action**

17.     Pending before the Honorable Margaret M. Morrow in the United States District Court for the Central District of California ("Central District") is a lawsuit which Defendants removed to the Central District on March 7, 2011 from Los Angeles Superior Court, and which is related to the above-captioned matter.  The matter is entitled *Magali Gallegos, individually, and on behalf of members of the general public similarly situated, vs. Comerica Bank, a Texas corporation, Comerica Incorporated, a Delaware corporation, and Comerica Management Company, Inc., a Michigan corporation, and Does 1 through 100, inclusive,* Case No. 11-CV-01938-MMM (PLAx) ("*Gallegos* Lawsuit").

18.     Though the *Gallegos* matter was initially assigned to the Honorable Christina A. Snyder following removal from state court, the case was transferred to Judge Morrow on the ground that it was related to the *Cordova* action already pending before Judge Morrow.  Specifically, the Court Order re Transfer noted that the *Gallegos* matter arises from the same or closely related transactions, happenings or events; calls for the determination of the same or substantially related or similar questions of law and fact, and for other reasons would entail substantial duplication of labor if heard by different judges.  A true and correct copy of the Order re Transfer of the *Gallegos* action to Judge Morrow is attached hereto as **Exhibit H**.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL                                    5.                                    Case No.

19.     In the *Gallegos* Lawsuit, Gallegos, a former Assistant Banking Center Manager employed by Comerica Management Company, primarily alleges that she worked as an Assistant Banking Center Manager within Comerica's Greater Los Angeles District in California from September 2006 until approximately December 2010, and was misclassified as exempt from overtime. As a result, she claims she was not provided with proper minimum and overtime wages, and was not provided with meal and rest breaks or accurate wage statements. Her lawsuit was filed as a putative class action, and she purports to represent all former and current Assistant Banking Center Managers employed by Defendants in the state of California within its Greater Los Angeles District at any time from November 3, 2005 through final judgment.

20.     The *Gallegos* Complaint, which was filed against the same three Defendants as the matter herein, also alleges the same two causes of action asserted in the present action: (1) Violation of California Labor Code §1194 (Unpaid Minimum and Overtime Wages); and (2) Violation of California Business and Professions Code §§ 17200, *et seq.*   A true and correct copy of the Complaint filed in the *Gallegos* lawsuit is attached hereto as **Exhibit D.**

***Rumohr* Action**

21.     Pending before the Honorable Arlene T. Borick in the Superior Court for the State of California for the County of San Francisco is a lawsuit which was filed on February 22, 2011, and which is related to the above-captioned matter. The matter is entitled *Carolina Rumohr, individually, and on behalf of members of the general public similarly situated; vs. Comerica Bank, a Texas corporation, Comerica Incorporated, a Delaware corporation; and Comerica Management Company, Inc., a Michigan corporation; and Does 1 through 100, inclusive*, Case No. CGC-11-508433 ("*Rumohr* Lawsuit").

22.     In the *Rumohr* Lawsuit, Rumohr, a former Assistant Banking Center Manager employed by Comerica Management Company, primarily alleges that she worked as an Assistant Banking Center Manager in Defendants' San Francisco

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310.553.0308

DEFENDANTS' NOTICE OF REMOVAL                                        6.                                        Case No.

1  Bay Area District and was misclassified as exempt from overtime. As a result, she

2  claims she was not provided with proper minimum and overtime wages and was not

3  provided with meal and rest breaks or accurate wage statements. Her lawsuit was

4  filed as a putative class action, and she purports to represent all former and current

5  Assistant Banking Center Managers employed by Defendants in Defendants' San

6  Francisco Bay Area District in the state of California at any time from November 3,

7  2005 through the entry of judgment.

8       23.    The *Rumohr* Complaint, which was filed against the same three

9  Defendants as the matter herein, also alleges the same two causes of action asserted in

10  the present action: (1) Violation of California Labor Code §1194 (Unpaid Minimum

11  and Overtime Wages); and (2) Violation of California Business and Professions Code

12  §§ 17200, *et seq.* A true and correct copy of the Complaint filed in the *Rumohr*

13  lawsuit is attached hereto as **Exhibit E.**

14      24.    Defendants are simultaneously removing the *Rumohr* lawsuit to

15  the Northern District of California on the same grounds as set forth herein. Following

16  removal, Defendants plan to move to transfer and consolidate the present lawsuit with

17  the *Granata, Gallegos* and *Rumohr* actions described herein.

18  ***Granata* Action**

19      25.    Pending before the Honorable Jeffrey B. Barton in the Superior

20  Court for the State of California for the County of San Diego ("San Diego Superior

21  Court") is a lawsuit which was filed on February 18, 2011, and which is related to the

22  above-captioned matter. The matter is entitled *Juliette Granata, individually, and on*

23  *behalf of members of the general public similarly situated; vs. Comerica Bank, a*

24  *Texas corporation, Comerica Incorporated, a Delaware corporation, and Comerica*

25  *Management Company, Inc., a Michigan corporation,* Case No. 37-2011-00086316-

26  CU-OE-NC ("*Granata* Lawsuit").

27      26.    In the *Granata* Lawsuit, Granata, a former Assistant Banking

28  Center Manager employed by Comerica Management Company, primarily alleges that

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL                              7.                              Case No.

she worked as an Assistant Banking Center Managers in California and was misclassified as exempt from overtime. As a result, she claims she was not provided with proper minimum and overtime wages and was not provided with meal and rest breaks or accurate wage statements. Her lawsuit was filed as a putative class action, and she purports to represent all former and current Assistant Banking Center Managers employed by Defendants at a Comerica Banking Center within Defendants' South Coast District at any time from November 3, 2005 through final judgment.

27.    The *Granata* Complaint, which was filed against the same three Defendants as the matter herein, also alleges the same two causes of action asserted in the present action: (1) Violation of California Labor Code §1194 (Unpaid Minimum and Overtime Wages); and (2) Violation of California Business and Professions Code §§ 17200, *et seq.*  A true and correct copy of the Complaint filed in the *Granata* lawsuit is attached hereto as **Exhibit F.**

28.    Defendants are simultaneously removing the *Granata* lawsuit to the Southern District of California on the same grounds as set forth herein. Following removal, Defendants plan to move to transfer and consolidate the present lawsuit with the *Granata, Gallegos* and *Rumohr* actions described herein.

## FOR PURPOSES OF REMOVAL UNDER CAFA, THE *RUMOHR, GALLEGOS, GRANATA* AND *MATHEWS* ACTIONS MUST BE TREATED AS A SINGLE CASE

29.    For purposes of removal, the instant matter must be viewed as a single case together with the *Gallegos, Granata* and *Rumohr* lawsuits. Together, these four lawsuits represent one single action for purposes of removal, and for establishing jurisdiction under the Class Action Fairness Act.[1] *See Freeman v. Blue Ridge Paper Products, Inc.*, 551 F.3d 405 (6th Cir. 2008); *Proffitt v. Abbott*

---

[1] As noted above, Defendants plan to move to transfer and consolidate these four actions following removal of the *Rumohr, Granata* and *Mathews* actions to federal court. The *Gallegos* action was removed to federal court on March 7, 2011.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL                8.                Case No.

1  *Laboratories*, 2008 U.S. Dist. LEXIS 72891 (E.D. Tenn. Sept. 23, 2008).[2]

2       30.   In *Freeman v. Blue Ridge Paper Products, Inc.*, 551 F.3d 405 (6th

3  Cir. 2008), the Sixth Circuit found that five separate state court class actions, all

4  involving the same parties and claims, must be viewed as a single case for purposes of

5  establishing federal jurisdiction under CAFA. In *Freeman*, the plaintiffs had divided

6  what had once been a single action into five distinct state court cases, each covering a

7  successive six-month time period. *Id.* at 407. In each of the five complaints, the

8  plaintiffs capped damages at $74,000 for each individual plaintiff and $4.9 million

9  overall. *Id.* The defendant removed all five of the cases, on the theory that each of

10 them met the requirements for jurisdiction under CAFA because each case involved

11 more than $5 million in controversy. On appeal, the Sixth Circuit found that while the

12 plaintiffs were ordinarily free to cap their damages to avoid federal jurisdiction under

13 CAFA, under the circumstances, the damages alleged in each of the five cases had to

14 be aggregated. The result was that far more than $5 million was in controversy (the

15 other requirements for CAFA removal were also met). *Id.* at 407, 409. The Court

16 noted, in particular, that "[t]he complaints are identical in all respects except for the

17 artificially broken up time periods. Plaintiffs put forth no colorable reason for

18 breaking up the lawsuits in this fashion, other than to avoid federal jurisdiction. In

19 fact, plaintiffs' counsel admitted at oral argument that avoiding CAFA was the only

20

21 _____

    [2] Defendants could not locate any Ninth Circuit authority addressing CAFA
22 jurisdiction where a single class action that met the requirements for CAFA removal
    was splintered into several distinct state court actions. In *Tanoh v. Dow Chemical*
23 *Company*, 561 F.3d 945 (9th Cir. 2009), the Ninth Circuit determined that seven
    actions against the same defendant could not be aggregated to qualify as a "mass
24 action" under CAFA. However, *Tanoh* is distinguishable. CAFA specifically
    excludes actions in which claims have been "joined upon motion of a defendant" from
25 the definition or a "mass action." *Tanoh*, 561 F. 3d at 951; 28 U.S.C.
    §1332(d)(11)(B)(i). No such exclusion is contained in the section of CAFA
26 addressing class actions, however. The absence of such language is telling, and makes
    *Tanoh* readily distinguishable from the case at bar. "Congress is presumed to act
27 intentionally and purposely when it includes language in one section but omits it in
    another." *Estate of Bell v. Commissioner*, 928 F.2d 901, 904 (9th Cir. 1991).
28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL       9.                     Case No.

1 reason for this structuring ... CAFA was clearly designed to prevent plaintiffs from
2 artificially structuring their suits to avoid federal jurisdiction." *Id.* The Court further
3 found that CAFA should be interpreted "not to permit the splintering of lawsuits
4 solely to avoid federal jurisdiction ..." *Id.* at 408.

5        31.   In *Proffitt v. Abbott Laboratories*, 2008 U.S. Dist. LEXIS 72891
6 (E.D. Tenn. Sept. 23, 2008), plaintiff filed eleven state court class actions against the
7 same defendant. The only difference between the eleven complaints was the time
8 period covered – the complaints each covered a different year, spanning an entire
9 decade. *Id.* at *5-6. Each complaint also limited all damages to $4,999,000. *Id.* at *4.
10 Defendant removed all eleven cases pursuant to CAFA. The Court found that "the
11 time divisions are a deliberate attempt to circumvent the CAFA so that the plaintiff
12 can place a damage disclaimer of $4,999,000 in each complaint. The time divisions
13 are completely arbitrary and have no justifiable basis other than as a means to create
14 time frames small enough to allow the damages disclaimers as they are not warranted
15 by the facts of the alleged conspiracy." *Id.* at *6. The Court thus held that the eleven
16 cases could not be considered as isolated lawsuits for purposes of CAFA jurisdiction,
17 and that together, the amount in controversy was met. *Id.* at 12-13.

18        32.   Just as in the *Freeman* and *Proffitt* cases, Plaintiffs' counsel has
19 attempted to avoid CAFA jurisdiction by artificially splintering what was initially a
20 single lawsuit into four separate actions.[3] While the plaintiffs in *Freeman* and *Proffitt*
21 matters severed their lawsuits into arbitrary time periods, here Plaintiffs have simply
22 gerrymandered their action by carving up the class by geographical region. However,
23 this geographical division is just as arbitrary as the time divisions in *Freeman* and
24 *Proffitt*. Indeed, in *Cordova*, the motion for class certification was briefed by the

25
26 [3] The *Rumohr, Gallegos, Granata* and *Mathews* actions are all off-shoots from the
original *Cordova* action. The *Cordova* action is still pending, but now involves only
27 Cordova's individual claims, as well as those under PAGA. Accordingly, while there
are technically five lawsuits, *Cordova* is treated separately because it no longer
28 contains class allegations for violations of unpaid overtime and the like.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

DEFENDANTS' NOTICE OF           10.                         Case No.
REMOVAL

1 parties, but the motion was withdrawn by Cordova's counsel before it could be heard.
2 In the Motion for Class Certification, Cordova's attorneys made no arguments with
3 respect to geographical distinctions amongst the class, further demonstrating that the
4 filing of four separate actions is a deliberate attempt to circumvent CAFA.

5       33.    Just as the counsel in *Freeman* admitted that the filing of five
6 separate state court complaints was a means to avoid CAFA jurisdiction, counsel for
7 Plaintiffs admitted that they were breaking up the class of Assistant Banking Center
8 Managers into several smaller class actions in state court specifically in order to avoid
9 federal court CAFA jurisdiction. (Lidman Decl., ¶8.). They also noted in writing
10 that they had withdrawn the Cordova class claims because they "believed that it would
11 be a fool's errand to seek certification in **federal court in the 9th Circuit** where the
12 Cordova case is pending." (Lidman Decl. at ¶9, and Exhibit 1 thereto (emphasis in
13 original exhibit)). The filing of four separate state complaints, identical in all respects
14 except the geographic scope of the class each named plaintiff purports to represent,
15 was simply a tactic by counsel for the plaintiffs encompassed by the *Cordova* action to
16 avoid federal jurisdiction. Indeed, Plaintiffs Rumohr, Gallegos, Granata and Mathews
17 measure their class period from November 3, 2005 to the present – four years prior to
18 the filing of the *Cordova* action, rather than their own complaints, further evidencing
19 the argument that this is one single action. **Exhibits A, D, E & F** at ¶21, footnote 1
20 thereto.

21       34.    Because the filing of the *Rumohr*, *Gallegos*, *Granata* and
22 *Mathews* lawsuits was nothing more than an attempt to evade federal jurisdiction
23 under CAFA, the cases must be viewed as one sole action for purposes of determining
24 whether the jurisdictional requirements of CAFA are met.

25     **THIS COURT HAS JURISDICTION OVER THIS CASE UNDER CAFA, 28**
26                         **U.S.C. § 1332(d)**

27       35.    Under CAFA, "[t]he district courts shall have original jurisdiction
28 of any civil action in which the matter in controversy exceeds the sum or value of

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL           11.                           Case No.

1    $5,000,000, exclusive of interest and costs, and is a class action in which . . . (A) any

2    member of a class of plaintiffs is a citizen of a State different from any defendant." 28

3    U.S.C. § 1332(d)(2). CAFA authorizes removal of such actions in accordance with 28

4    U.S.C. §§ 1441 and 1446.

5            36.    This action[4] has been styled as a class action pursuant to

6    California Code of Civil Procedure § 382. (Complaints (**Exhibits A, D, E, F**), ¶ 20).

7            37.    As set forth below, this Court has jurisdiction over this case under

8    CAFA, 28 U.S.C. § 1332(d), and this case may be removed pursuant to the provisions

9    of 28 U.S.C. § 1441(a), in that it is a civil class action wherein: (A) there is diversity

10    between at least one class member and Defendants; (B) the proposed class contains at

11    least 100 members; (C) Defendants are not states, state officials, or other

12    governmental entities; and (D) the total amount in controversy for all class members

13    exceeds $5,000,000.

14         **A.**     **Diversity of Citizenship.**

15            38.    CAFA's diversity requirement is satisfied when at least one

16    plaintiff is a citizen of a state in which the defendant is not a citizen. See 28 U.S.C. §§

17    1332(d)(2)(A), 1453.

18            39.    For diversity purposes, a person is a "citizen" of the state in which

19    he or she is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th

20    Cir. 1983); *see also LeBlanc v. Cleveland*, 248 F.3d 95, 100 (2d Cir. 2001)

21    (citizenship determined at the time the lawsuit is filed); *see also Lundquist v.*

22    *Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir. 1991). A person's domicile is

23    the place he or she resides with the intention to remain, or to which he or she intends

24    to return. *See Kanter v. Warner–Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

25            40.    At the time Plaintiff commenced this action and at the time of

26

27    [4] As noted above, the term "this action" refers to not only the instant case, but also to

28    the *Gallegos, Granata* and *Rumohr* actions collectively as one single matter for purposes of establishing jurisdiction under CAFA.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL       12.       Case No.

1   removal, Plaintiffs Rumohr, Gallegos, Granata and Mathews were all citizens of the

2   state of California. (Complaints (**Exhibits A, D, E, F**), ¶ 6) (Plaintiff Mathews alleges

3   that she is a resident of the County of Santa Clara, in the State of California); *see Lew*

4   *v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (residency can create a rebuttable

5   presumption of domicile supporting diversity of citizenship); *see also State Farm Mut.*

6   *Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in

7   state court complaint of residency "created a presumption of continuing residence in

8   [state] and put the burden of coming forward with contrary evidence on the party

9   seeking to prove otherwise"); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS

10  21162, *22 (E.D. Cal. 2008) (place of residence provides "prima facie" case of

11  domicile).

12          41.     For purposes of § 1332, a corporation is deemed to be a citizen of

13  any State by which it has been incorporated and of the State where it has its principal

14  place of business. *See* 28 U.S.C. § 1332(c)(1).   As recently clarified by the United

15  States Supreme Court in *Hertz Corp. v. Friend*, 559 U.S. ___; 130 S. Ct. 1181; 175 L.

16  Ed. 2d 1029 (2010), "[t]he phrase "principal place of business" in  28 U. S. C. S. §

17  1332(c)(1) refers to the place where the corporation's high level officers direct,

18  control, and coordinate the corporation's activities. Courts have often metaphorically

19  called that place the corporation's "nerve center." The "nerve center" will typically be

20  found at a corporation's headquarters."

21          42.     Defendants are not states, state officials, or other governmental

22  entities.  Comerica Incorporated is the parent company of Comerica Bank, a Texas

23  Banking Association. Comerica Bank is a wholly-owned subsidiary of Comerica

24  Incorporated.   Comerica Management Company is a wholly-owned subsidiary of

25  Comerica Bank.   Comerica Incorporated is a publicly-traded company with shares

26  traded on the New York Stock Exchange.    (Declaration of Laura Kurowski

27  ("Kurowski Decl."), ¶¶4, 5, 6 and 7).

28          43.     Defendant CI was at the time of the filing of this action, and

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310 553.0308

DEFENDANTS' NOTICE OF
REMOVAL                          13.                          Case No.

1   remains a citizen of the States of Delaware and Texas, in that it was and continues to
2   be a corporation incorporated under the laws of the State of Delaware with its
3   principal place of business and corporate headquarters in Texas (where CI performs its
4   executive and administrative functions). (Kurowski Decl., ¶5).

5       44.   Defendant CB was at the time of the filing of this action, and
6   remains a citizen of the State of Texas, in that it was and continues to be a corporation
7   incorporated under the laws of the State of Texas, with its principal place of business
8   and corporate headquarters in Texas (where CB performs its executive and
9   administrative functions). (Kurowski Decl., ¶6).

10      45.   Defendant CMC was at the time of the filing of this action, and
11  remains a citizen of the State of Michigan, in that it was and continues to be a
12  corporation incorporated under the laws of the State of Michigan, with its principal
13  place of business and corporate headquarters in Michigan (where CMC performs its
14  executive and administrative functions). (Kurowski Decl., ¶7).

15      46.   Defendants Does 1 through 100 are fictitious.   The Complaint
16  does not set forth the identity or status of any said fictitious defendants, nor does it set
17  forth any charging allegation against any fictitious defendants.   Pursuant to section
18  1441(a), the citizenship of defendants sued under fictitious names must be disregarded
19  for the purposes of determining diversity jurisdiction and cannot destroy the diversity
20  of citizenship between the parties in this action.  *Newcombe v. Adolf Coors Co.*, 157
21  F.3d 686, 690-91 (9th Cir. 1998).   In addition, because CAFA jurisdiction requires
22  only minimal diversity, so long as any Plaintiff is diverse from any Defendant, the
23  diversity requirements are met.

24      47.   As Plaintiffs Rumohr, Gallegos, Granata and Mathews are all
25  citizens of California and Defendants are all incorporated and have their principal
26  place of business outside California, the minimal diversity requirement of 28 U.S.C. §
27  1332(d)(2)(A) is satisfied.

28      **B.    The Proposed Class Contains At Least 100 Members.**

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL                          14.                          Case No.

48. Plaintiffs Rumohr, Gallegos, Granata and Mathews seek to represent a class of "[a]ll current and former California-based salaried "Assistant Banking Center Managers," or persons who held similar job titles and/or performed similar job duties, who worked at a Comerica Banking Center located within [California] at any time during the period from November 3, 2005 to final judgment."[5]

49. The total number of ABCMs who worked for Comerica Management Company from November 3, 2005 through March 17, 2011 is approximately 201 individuals. (Kurowski Decl., ¶9). Thus, the proposed class in this lawsuit is in excess of the 100 person minimum required for CAFA jurisdiction.

## C. Defendants Are Not Governmental Entities.

50. Defendants are not states, state officials, or other governmental entities. Comerica Incorporated is the parent company of Comerica Bank, a Texas Banking Association. Comerica Bank is a wholly-owned subsidiary of Comerica Incorporated. Comerica Management Company is a wholly-owned subsidiary of Comerica Bank. Comerica Incorporated is a publicly-traded company with shares traded on the New York Stock Exchange. (Kurowski Decl., ¶¶4 – 7).

## D. Aggregate Class Amount In Controversy Exceeds $5,000,000.

51. Plaintiffs Rumohr, Gallegos, Granata and Mathews' Complaints for damages each claim that the total amount in controversy (inclusive of attorneys' fees) is less than $5,000,000. (Complaints (**Exhibits A, D, E, F**) at ¶5). Were Plaintiff permitted to unilaterally and conclusively evade removal with a simple one-line allegation that less than $5 million is at issue in the case, however, this would undermine the entire purpose of CAFA. However, as noted above, the amounts in controversy in the *Rumohr, Gallegos, Granata* and *Mathews* actions must be

---

[5] In each of their Complaints, Plaintiffs Rumohr, Gallegos, Granata and Mathews (herein, "Plaintiffs") seek to represent different Assistant Banking Center Managers in each of Defendants' four California regions. Together, therefore, these Plaintiffs thus seek to represent all Assistant Banking Center Managers in California from November 3, 2005 through final judgment.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

1   aggregated for purposes of determining CAFA jurisdiction. However, as noted above,

2   the amounts in controversy in the *Rumohr, Gallegos, Granata* and *Mathews* actions

3   must be aggregated for purposes of determining CAFA jurisdiction.

4        52. Under CAFA, where the complaint pleads an amount in

5   controversy less than the jurisdictional amount, Defendants will be able to remove the

6   case to federal court by showing to a legal certainty that the amount in controversy

7   exceeds the statutory minimum. *See Lowdermilk v. United States Bank National*

8   *Assoc.*, 479 F.3d 994, 999 (9th Cir. 2007). The Ninth Circuit has recognized that

9   "while the 'legal certainty' standard is difficult to define, at a minimum, Defendants

10  must produce enough evidence to allow a court to estimate with some certainty the

11  actual amount in controversy." *Johnson v. U.S. Vision, Inc.*, 2011 U.S. App. LEXIS

12  3698, at *2 (9th Cir. Feb. 24, 2011) (reaffirming that the burden "is not

13  insurmountable"); *see also Nelson v. Bic USA, Inc.*, 2008 U.S. Dist. LEXIS 27366

14  (S.D. Cal. Apr. 1, 2008) (denying motion to remand and finding that removing party

15  established the amount in controversy exceed $5 million under "legal certainty"

16  standard).

17       53. Defendants can establish the amount in controversy by the

18  allegations in the Complaint, or by setting forth facts in the Notice of Removal that

19  demonstrate that the amount in controversy exceeds the jurisdictional minimum with

20  "legal certainty". *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir.

21  1996); *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 984 (S.D. Cal. 2005)

22  ("According to the Report of the Senate Committee on the Judiciary on CAFA, the

23  requirement under CAFA that the amount in controversy exceed $5,000,000 in the

24  aggregate may be established 'either from the viewpoint of the plaintiff or the

25  viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages,

26  injunctive relief, or declaratory relief).'"). The District Court may consider whether it

27  is facially apparent from the Complaint that the jurisdictional amount is in

28  controversy. *Singer v. State Farm Mutual Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL      16.      Case No.

1   1997); *Conrad Assoc. v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198

2   (N.D. Cal. 1998). In addition to the contents of the removal petition, the Court

3   considers "summary-judgment-type evidence relevant to the amount in controversy at

4   the time of removal," such as affidavits or declarations. *Valdez v. Allstate Ins. Co.*,

5   372 F.3d 1115, 1117 (9th Cir. 2004); *Singer*, 116 F.3d at 377. Defendants are not

6   obliged to "research, state, and prove the plaintiff's claim for damages." *McCraw v.*

7   *Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994).

8          54.    In measuring the amount in controversy, a court must assume that

9   the allegations of the complaint are true and that a jury will return a verdict for the

10  plaintiff on all claims made in the complaint. *Kenneth Rothschild Trust v. Morgan*

11  *Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The ultimate

12  inquiry is what amount is put "in controversy" by the plaintiff's complaint, not what a

13  defendant will actually owe. *Rippee*, 408 F. Supp. 2d at 986; *see also Scherer v.*

14  *Equitable Life Assurance Society of the U.S.*, 347 F.3d 394, 399 (2d Cir. 2003)

15  (recognizing that the ultimate or provable amount of damages is not what is

16  considered when determining the amount in controversy; rather, it is the amount put in

17  controversy by the plaintiff's complaint).

18         55.    Defendants deny the validity and merit of all of Plaintiffs' claims,

19  the legal theories upon which they are purportedly based, and the claims for monetary

20  and other relief that flow from them. However, for purposes of removal only, and

21  without conceding that Plaintiffs or the putative class are entitled to any damages or

22  penalties, it is readily apparent that the aggregated claims of the putative class as

23  defined in the *Rumohr, Gallegos, Granata* and *Mathews* matters establish an amount

24  "in controversy" well in excess of the jurisdictional minimum of $5,000,000.

25         56.    As noted above, pending before the Honorable Margaret M.

26  Morrow, in the United States District Court for the Central District of California

27  ("Central District"), is a lawsuit related to the instant litigation which Defendants

28  removed to the Central District on December 3, 2009, from Los Angeles County

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL                                    17.                          Case No.

1    Superior Court, and is related to the above-captioned matter. The matter is entitled

2    *Yiadira Cordova; individually, and on behalf of members of the general public*

3    *similarly situated; vs. Comerica Bank, a Texas corporation, Comerica Incorporated,*

4    *a Delaware corporation, and Comerica Management Company, Inc., a Michigan*

5    *corporation*, Case No. 09-CV-08905-MMM ("Cordova Lawsuit").

6         57. In the *Cordova* lawsuit, Cordova, a former Assistant Banking

7    Center Manager employed by Comerica Management Company primarily alleges that

8    she worked at a Comerica banking center in California and was misclassified as

9    exempt overtime exempt, and was not provided with meal and rest breaks or accurate

10   wage statements. Her lawsuit was filed as a putative class action and she purports to

11   represent former and current "Assistant Managers" employed by Defendants in the

12   state of California. Cordova also sought remedies under the California Labor Code

13   Private Attorney General Act ("PAGA") on behalf of all other "aggrieved" Assistant

14   Banking Center Managers. On December 20, 2010, Cordova filed a motion for class

15   certification. In connection with the motion for class certification, Cordova submitted

16   sworn declarations from several putative class members. A true and correct copy of

17   the sworn declarations submitted to the United States District Court, Central District

18   of California on December 20, 2010 are attached hereto as **Exhibit G.**

19         58. On behalf of themselves and the putative class members, Plaintiffs

20   in the *Gallegos, Rumohr, Mathews* and *Granata* matters seek: (1) Violation of

21   California Labor Code §1194 (Unpaid Minimum and Overtime Wages) (Complaint,

22   ¶¶ 55-69); and (2) Violation of California Business and Professions Code §§ 17200, *et*

23   *seq.* The second cause of action for violation of California Business and Professions

24   Code §§ 17200, *et seq.* seeks restitution of wages for various alleged violations,

25   including failure to pay overtime, failure to provide meal and rest periods (and pay the

26   one hour premium owed resulting therefrom), failure to pay minimum wages, failure

27   to timely pay wages upon termination, failure to timely pay wages during

28   employment, failure to provide compliant wage statements, failure to keep complete

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL        18.        Case No.

1   and accurate payroll records and failure to reimburse necessary business-related

2   expenses and costs. (Complaints (**Exhibits A, D, E, F**), ¶¶ 70-86).

3         59.   Plaintiffs' second cause of action for violations of California

4   Business & Professions Code §17200 seeks restitution of wages held for unpaid

5   overtime wages; unpaid wages for missed meal periods and rest breaks, going back to

6   November 3, 2005. Plaintiffs' first cause of action further seeks statutory penalties

7   pursuant to Labor Code §1197.1 and §2698 et seq. (Complaints (**Exhibits A, D, E,**

8   **F**), ¶¶55-85 and Prayers for Relief).

9         60.   Claims of unlawful business practices under California Business

10  and Professions Code §§ 17200, *et seq.*, are subject to a four-year statute of

11  limitations. *See* Cal. Bus. & Prof. Code § 17208. Accordingly, the three-year statute

12  of limitations period for the underlying statutory Labor Code claims for Plaintiffs'

13  first, second and third causes of action pursuant to Cal. Labor Code §§ 510 and 226.7

14  are extended by one additional year. *See Cortez v. Purolator Air Filtration Products*

15  *Co.*, 23 Cal. 4th 163 (2000)(repayment of back wages recoverable under California's

16  unfair competition law and is subject to a four year statute of limitations).

17        61.   Despite the fact that the *Rumohr, Gallegos, Granata* and *Mathews*

18  were all filed in February 2011, these four Plaintiffs allege that the class period is

19  measured from November 3, 2005 because Defendants have been on notice of the

20  allegations since November 3, 2009 (with the filing of the *Cordova* action).

21  (Complaints, (**Exhibits A, D, E, F**) at footnote 1). Though Defendants dispute these

22  Plaintiffs' measurement of the statute of limitations, for purposes of removal,

23  Defendants use this longer limitations period for purposes of measuring the amount in

24  controversy. Accordingly, the class that the four Plaintiffs seek to represent, as set

25  forth in the class definition, begins on November 3, 2005.

26  ## Unpaid Overtime Compensation Potentially Recoverable As Restitution Under

27  ## California Business & Profession Code § 17200

28        62.   Plaintiffs seek through their second cause of action for violations

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2048 Century Park East
5th Floor
Los Angeles, CA 90067 5107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL                    19.                    Case No.

1  of Business & Professions Code § 17200 restitution for allegedly unpaid overtime.

2  (Complaints (**Exhibits A, D, E, F**), ¶ 46.). Plaintiffs' unpaid overtime claim on behalf

3  of the putative class is based upon the assertion that putative class members worked in

4  excess of (8) hours in a day and/or in excess of forty (40) hours in a week

5  "throughout" the class period. While Plaintiffs do not define "throughout," Webster's

6  New World Dictionary, Third College Edition (1988), defines "throughout" to mean

7  with "during the whole time or action; from beginning to end".

8       63.    The 201 potential class members worked as ABCMs for a

9  conservative total of 20,364 workweeks during the putative class period. (Kurowski

10  Decl., ¶¶9, 10).  For these 201 ABCMs, there were a total of 15,968 workweeks

11  during which putative class members worked four or more days. (Kurowski Decl.,

12  ¶¶10, 11).  Defendants have excluded those workweeks from this analysis where

13  putative class members worked three or fewer days. (Kurowski Decl. ¶11).

14       64.    Plaintiff Cordova asserted causes of action for: (1) violation of

15  Labor Code §§ 510 and 1998 (unpaid overtime); (2) violation of Labor Code §§ 226.7

16  and 512(a)(unpaid meal period premiums); (3) violation of Labor Code § 226.7

17  (unpaid rest period premiums); (4) violation of Labor Code §§ 201 and 202 (wages

18  not timely paid upon termination); (5) violation of Labor Code § 226(a) (non-

19  compliant wage statements); (6) violation of California Business and Professions

20  Code §§ 17200 et seq.

21       65.    The class members who submitted declarations in the *Cordova*

22  lawsuit attested to working between 7 to 40 hours of overtime per week on average.

23  **Exhibit G**.  Furthermore, some of the class members attested that "based on my own

24  observations of other employees, as well as my conversations with them, I believe that

25  the experience of other Comerica Bank Assistant Banking Center Managers is similar

26  to mine" or "I believe my experience is similar in nature to that of other current and

27  former 'Assistant Managers' in the...conditions and hours worked." **Exhibit G** (See

28  Declaration of Daniel Robles, ¶ 10; Declaration of William Sweet, ¶ 10; Declaration

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310.553.0308

DEFENDANTS' NOTICE OF
REMOVAL                                20.                                Case No.

1   of Aline Khelghatian, ¶ 11).

2          66.    Based on the allegations in the Complaints and, notwithstanding

3   sworn declarations submitted by more than a dozen of the ABCM putative class

4   members who attest to working, on average, a minimum of 7 hours of overtime per

5   week, conservatively applying only five hours of overtime worked by the 201 ABCM

6   putative class members per workweek for purposes of determining the amount in

7   controversy, the unpaid overtime hours amounts to 79,840 unpaid overtime hours

8   (15,968 workweeks x 5 hours of overtime).

9          67.    To determine the monetary amount at issue, the total number of

10  hours is multiplied by one and one-half times (1.5) the employees' hourly rate for

11  each hour of unpaid overtime.

12         68.    The four Plaintiffs and the members of the ABCM class they seek

13  to represent were paid on a salary basis. (Kurowski Decl. ¶12). As of February 1,

14  2011, the average salary of an ABCM was an equivalent of $26.04 per hour.

15  (Kurowski Decl. ¶12). The average hourly rate for ABCMs over the entire statutory

16  period is $24.83. (Kurowski Decl., ¶13).

17         69.    Using the average hourly rate for ABCMs of $24.83 (which is

18  much lower than the current average hourly rate for a putative class member), the

19  overtime rate, or one and one-half times the hourly rate of $24.83 is $37.245 ($24.83 x

20  1.5 = $37.245). Applying this hourly overtime rate of $37.245 to the approximately

21  79,840 overtime hours owed during the putative class period, the amount in

22  controversy for the ABCMs' overtime claim amount to $2,973,640.80 ($37.245

23  overtime rate x 79,840 overtime hours = $2,973,640.80), all of which is separate and

24  apart from any applicable penalties, interest, and attorneys' fees. This figure does not

25  take into account any overtime claimed for weeks where putative class members

26  worked three or fewer days, nor does it account for any double time hours alleged to

27  have been worked, making it an overly conservative estimate.

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL                                21.                              Case No.

| Class | Alleged OT Hours | Overtime Rate | Potential Unpaid Overtime Recoverable as Restitution Under B&P Code §17200 |
|-------|------------------|---------------|---------------------------------------|
| ABCMs | 79,840 | $37.245 | $2,973,640.80 |

**Compensation for Missed Meal Periods Potentially Recoverable As Restitution**

**Under California Business & Professions Code § 17200**

70.     Plaintiffs allege that that Defendants "regularly and consistently" failed to provide them with uninterrupted meal breaks. (Complaints (**Exhibits A, D, E, F**), ¶47.) Thus, Plaintiffs seek restitution for allegedly unpaid wages for missed meal breaks in the amount of one (1) hour of pay at their regular rate of compensation for each workday that a meal period was not provided. (Complaints (**Exhibits A, D, E, F**), ¶¶ 21, 70-86, and Prayer for Relief; *see also* Cal. Lab. Code § 226.7(b)).

71.     Plaintiffs do not state the frequency with which the alleged denial of any uninterrupted, legally-mandated meal period occurred, other than to note that meal breaks were "regularly" denied. While Plaintiffs do not define "regularly," *Webster's New World Dictionary*, Third College Edition (1988) defines "regularly" to mean "usual; customary .... habitual in action ... characterized by conformity to a fixed principle or procedure." In addition, based on the declarations submitted in support of Plaintiff Cordova's motion for class certification, on average, ABCMs were allegedly "rarely" able to, "never" or "frequently unable" to take their 30 minute meal breaks. **Exhibit G**. Furthermore, some of the class members attested that "based on my own observations of other employees, as well as my conversations with them, I believe that the experience of other Comerica Bank Assistant Banking Center Managers is similar to mine" or "I believe my experience is similar in nature to that of other current and former 'Assistant Managers' in the...conditions and hours worked." **Exhibit G** (See Declaration of Daniel Robles, ¶ 10; Declaration of William Sweet, ¶ 10; Declaration

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL                    22.                    Case No.

1  of Aline Khelghatian, ¶ 11).

2      72. Defendants deny the validity and merit of Plaintiffs' meal period
3  claims. However, Defendants assume for purposes of CAFA removal only, that such
4  alleged violations occurred only two times per workweek during the putative class
5  period for the ABCMs (i.e. during the 15,968 workweeks). Acting under this
6  assumption, the total number of missed meal periods at issue is 31,936 for ABCMs
7  (15,968 workweeks x 2 missed meal periods = 31,936). Applying the hourly rate of
8  $24.83 to the 31,936 missed meal breaks, a conservative estimate of the aggregate
9  amount in controversy for the missed meal break claims is $792,970.88 ($24.83
10 hourly rate x 31,936 missed meal breaks = $792,970.88).

11     73. Should Plaintiffs allege that they, along with the potential putative
12 class members, missed more than two meal periods per week during the putative class
13 period, than the amount in controversy is clearly higher.

| Class | Alleged Missed Meal Breaks (assuming only two per defined workweek) | Hourly Rate | Potential Wages for Missed Meal Breaks Recoverable as Restitution Under B&P Code §17200 |
|---|---|---|---|
| ABCMs | 31,936 | $24.83 | $792,970.88 |

**Compensation for Missed Rest Breaks Potentially Recoverable As Restitution**

**Under California Business & Professions Code § 17200**

23     74. Plaintiffs seek through their second cause of action for violations
24 of Business & Professions Code § 17200 restitution for allegedly unpaid wages for
25 missed rest breaks. (Complaints (**Exhibits A, D, E, F**), ¶76). Thus, Plaintiffs seek
26 restitution for allegedly unpaid wages for missed rest breaks in the amount of one (1)
27 hour of pay at their regular rate of compensation for each workday that a meal period

1   was not provided. (Complaints (**Exhibits A, D, E, F**), ¶¶ 21, 70-86, and Prayer for

2   Relief; *see also* Cal. Lab. Code § 226.7(b)).

3           75.    This claim is based on Plaintiffs' allegations that the Defendants

4   "regularly and consistently" failed to provide them with uninterrupted rest breaks.

5   (Complaints (**Exhibits A, D, E, F**), ¶47). While Plaintiffs do not define "regularly,"

6   *Webster's New World Dictionary*, Third College Edition (1988) defines "regularly" to

7   mean "usual; customary .... habitual in action ... characterized by conformity to a fixed

8   principle or procedure."

9           76.    Defendants deny the validity and merit of these claims. However,

10  for purposes of removal only, Defendants calculate the amount in controversy for the

11  missed rest break claims based upon the same calculation used to determine the

12  amount in controversy concerning Plaintiffs' missed meal period claims. Defendants

13  assume for purposes of CAFA removal only, that such alleged violations occurred

14  only two times per workweek during the putative class period for the ABCMs (i.e.

15  during the 15,968 workweeks). In addition, based on the declarations submitted in

16  support of Plaintiff Cordova's motion for class certification, some ABCMs attested

17  that they were allegedly "never able to" to take their rest breaks and that based on

18  their observations of other employees, they believe that the experience of other

19  Comerica Banking Center Managers were similar to their respective experiences.

20  **Exhibit G**.

21          77.    Acting under this assumption, the total number of missed rest

22  breaks at issue is 31,936 for ABCMs (15,968 workweeks x 2 missed rest periods =

23  31,936). Applying the hourly rate of $24.83 to the 31,936 missed rest breaks, a

24  conservative estimate of the aggregate amount in controversy for the missed rest break

25  claims is $ 792,970.88 ($24.83 hourly rate x 31,936 missed rest breaks =

26  $792,970.88).

27          78.    Should Plaintiffs allege that they, along with the potential putative

28  class members, missed more than two rest breaks per week during the putative class

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

DEFENDANTS' NOTICE OF
REMOVAL
24.
Case No.

1  period, or missed rest breaks during weeks when they worked three or fewer days,

2  then the amount in controversy is clearly higher.

| Class | Alleged Missed Rest Breaks | Hourly Rate | Potential Wages for Missed Rest Breaks Recoverable as Restitution Under B&P Code §17200 |
|---|---|---|---|
| ABCMs | 31,936 | $24.83 | $792,970.88 |

## Penalties Pursuant to Labor Code § 1197.1

79.  In connection with their first cause of action for unpaid wages, Plaintiffs seek to recover penalties pursuant to Labor Code §1197.1, which provides that Plaintiffs (and members of the putative class) are entitled to recover a penalty of one hundred dollars ($100) for the initial failure to timely pay her wages and two hundred and fifty dollars ($25) for each subsequent failure to pay each employee minimum wages. (Complaints (**Exhibits A, D, E, F**), ¶68).

80.  Though Defendants deny the merit of Plaintiffs' Labor Code §1197.1 penalty claim, for purposes of removal only, Defendants determine the amount in controversy by applying the maximum penalty authorized.

81.  A claim for penalties is subject to a one year statute of limitations pursuant to California Code of Civil Procedure §340(a).  Since Plaintiff filed this action on February 22, 2011, the claim for Labor Code §1197.1 penalties goes back to February 22, 2010.[6]

82.  From February 22, 2010 to March 25, 2011 (the date the data was compiled for purposes of this removal), at least 126 ABCMs have been employed in

[6] The *Rumohr* matter was filed on February 22, 2011, a few days after the *Gallegos, Granata* and *Mathews* actions, which were filed on February 18, 2011. However, the analysis is substantially the same, and Defendants herein use February 22, 2011 as the measuring date.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310 553 0308
DEFENDANTS' NOTICE OF REMOVAL     25.     Case No.

California. (Kurowski Decl., ¶18). Within that same time period, there were at least 3,314 pay periods in which ABCMs worked at least four days in a week. (Kurowski Decl., ¶17). Based on the assumption that ABCMs allege that they worked overtime compensation in each pay period where they worked at least four days in a week, it can be presumed that the putative class members are potentially entitled to Labor Code § 1197.1 penalties for each of the 3,314 pay periods that fall within the statute of limitations period to date for penalties.

83.     Applying a penalty of $100 for the first pay period for each of the 126 ABCMs, and $250 for the subsequent 3,188 pay periods within the statute of limitations, the potential Labor Code §1197.1 penalties to date are approximately $809,600.00 (($100 x 126) + ($250 x 3188) = $809,600.00).

84.     In total, the amount in controversy for Plaintiffs' claim for Labor Code § 1197.1 penalties is $809,600.00. Of course, this is a conservative estimate as it only takes into account the pay periods as of the date of the filing of this removal, not through final judgment as Plaintiffs seek.

**Penalties Pursuant to Labor Code § 2698, *et seq*.**

85.     In connection with their first cause of action for unpaid wages, Plaintiffs seek to recover penalties pursuant to Labor Code § 2699(a), (f) and (g) for violations of, among other Labor Code sections, Labor Code § 510. (Complaints **(Exhibits A, C, D, E)**, ¶9, Prayer for Relief). Violations of Labor Code § 510 result in penalties pursuant to Labor Code § 558(a), which provides that Plaintiff is entitled to recover a penalty of fifty dollars ($50) for the initial pay period where overtime was not paid, and one hundred dollars ($100) for each subsequent pay period where overtime was not paid.

86.     Though Defendants deny the merit of Plaintiffs' Labor Code § 2699 penalty claim, for purposes of removal only, Defendants determine the amount in controversy by applying the maximum penalty authorized.

87.     A claim for penalties is subject to a one year statute of limitations

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL                              26.                                            Case No.

1   pursuant to California Code of Civil Procedure §340(a). Since Plaintiffs filed this

2   action on February 22, 2011, the claim for Labor Code § 2699 penalties goes back to

3   February 22, 2010.[7]

4       88.     From February 22, 2010 to March 25, 2011 (the date the data was

5   compiled for purposes of this removal), 126 ABCMs have been employed in

6   California. (Kurowski Decl., ¶18). Within that same time period, there were 3,314

7   pay periods in which ABCMs worked at least four days in a week. (Kurowski Decl.,

8   ¶17). Based on the assumption that ABCMs allege that they worked overtime

9   compensation in each pay period where they worked at least four days in a week, it

10  can be presumed that the putative class members are potentially entitled to Labor

11  Code § 2699 penalties for each of the 3,314 relevant pay periods that fall within the

12  statute of limitations period to date.

13      89.     Applying a penalty of $50 for the first pay period for each of the

14  126 ABCMs, and $100 for the subsequent 3,188 pay periods within the statute of

15  limitations, the potential Labor Code § 2699 penalties to date are approximately

16  $325,100.00 (($50 x 126) + ($100 x 3,188) = $325,100.00).

17      90.     In total, the amount in controversy for Plaintiffs' claim for Labor

18  Code § 2699 penalties is $325,100.00. Of course, this is a conservative estimate as it

19  only takes into account the pay periods as of the date of the filing of this removal, not

20  through final judgment as Plaintiffs seek.

21                          **Attorneys' Fees**

22      91.     Plaintiff also seeks to recover attorneys' fees pursuant to

23  California Labor Code § 1194(a), among other statutory provisions. (Complaints

24  (**Exhibits A, D, E, F**), ¶10, Prayer for Relief). It is well settled that, in determining

25  whether a complaint meets the amount in controversy requirement, the Court should

26  _____

27  [7] The *Rumohr* matter was filed on February 22, 2011, a few days after the *Gallegos,
    Granata* and *Mathews* actions, which were filed on February 18, 2011. However, the
28  analysis is substantially the same, and Defendants herein use February 22, 2011 as the
    measuring date.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL                        27.                          Case No.

1  consider the aggregate value of claims for damages *as well as* attorneys' fees. *See,*
2  *e.g., Lowdermilk v. U.S. Bank Nat'l Assoc.,* 479 F.3d 994, 1000 (9th Cir. 2007);
3  *Kroske v. U.S. Bank Corp.,* 432 F.3d 976, 980 (9th Cir. 2005), *cert. denied,* 127 S. Ct.
4  157 (2006); *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155-1156 (9th Cir.
5  1998)(attorneys' fees may be taken into account to determine jurisdictional amounts).
6  Assuming an extremely conservative attorney's fee award of only 10% of the
7  aforementioned amounts in controversy, the amount of attorneys' fees recovered by
8  Plaintiff should she prevail will likely exceed $569,428.25 ($5,694,282.56 x 10% = $
9  $569,428.25). *See Chavez v. Netflix, Inc.,* 162 Cal. App. 4th 43, 66 n.11 (2008),
10  *quoting, Shaw v. Toshiba Am. Info. Sys., Inc.,* 91 F. Supp. 2d 942, 972 (E.D. Tex.
11  2000) ("Empirical studies show that, regardless whether the percentage method or the
12  lodestar method is used, fee awards in class actions average around one-third of the
13  recovery.").

14       92.    This estimated fee award is very conservative, given the high
15  hourly rates charged by Plaintiffs' attorneys. Plaintiffs' attorney Matthew Righetti has
16  previously declared under penalty of perjury that his hourly fee is $750.00. See,
17  Defendants' Request for Judicial Notice at ¶1, filed herewith, and Exhibit A thereto.
18  One of Plaintiff's other attorneys, Gene Williams, has an hourly rate of at least
19  $495.00. *See,* Defendants' Request for Judicial Notice at ¶2, filed herewith, and
20  Exhibit B thereto.

21                                        **Total Amount in Controversy**
22       93.    Based on the foregoing, the total potential recovery for Plaintiffs
23  on their claims for restitution pursuant to California Business and Professions Code
24  §17200 for unpaid overtime wages and unpaid compensation for missed meal and rest
25  breaks, and their claims for penalties pursuant to their first cause of action, plus their
26  claim for attorneys' fees, is no less than **$6,263,710.81**, as summarized below:

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL             28.                  Case No.

| Plaintiffs' Claim | Amount In Controversy |
|---|---|
| Restitution for Unpaid Overtime Wages | $2,973,640.80 |
| Restitution for Unpaid Compensation for Missed Rest Breaks | $792,970.88 |
| Restitution for Unpaid Compensation for Missed Meal Breaks[8] | $792,970.88 |
| Labor Code §1197.1 Penalties | $809,600.00 |
| Labor Code §2699 Penalties | $325,100.00 |
| Attorneys' Fees | $569,428.25 |
| **Amount In Controversy Subtotal** | **$6,263,710.81** |

94.    Based on the foregoing, this Court has jurisdiction over this case under CAFA, 28 U.S.C. § 1332(d), and removal of this case is appropriate pursuant to the provisions of 28 U.S.C. § 1441(a), as there is diversity between at least one class

[8] The California Court of Appeal recently held in a published decision that an employee is entitled to a one hour premium pursuant to Labor Code §226.7 for both a missed meal period and a missed rest period in a day such that an employee can recover a total of two hours of premium pay per day, if both a meal and rest period are missed that day. *See United Parcel Service, Inc. v. Superior Court*, 192 Cal. App. 4th 1043 (February 16, 2011).

1  member and Defendants; the proposed class contains at least 100 members;
2  Defendants are not states, state officials, or other governmental entities; and the total
3  amount in controversy for all potential class members exceeds $5,000,000.

### TIMELINESS OF REMOVAL

5  95. This Notice of Removal is timely. Under 28 U.S.C. § 1446(b), the
6  notice of removal of a civil action must be filed within 30 days after service of the
7  summons and complaint. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526
8  U.S. 344, 354 (1999) (the 30-day removal period runs from the service of the
9  summons and complaint; receipt of summons and complaint is insufficient to trigger
10 removal period).

11 96. Plaintiff filed her Complaint with the Santa Clara Superior Court
12 on February 18, 2011. The Complaint was served on each of the Defendants on
13 March 9, 2010. As such, because this matter is being removed within 30 days of
14 service of the Complaint, this Notice of Removal is timely as a matter of law.

### NOTICE TO PLAINTIFF AND STATE COURT

16 Contemporaneously with the filing of this Notice of Removal in the United
17 States District Court for the Northern District of California, written notice of such
18 filing will be given by the undersigned to Plaintiff's Counsel of Record, Matthew
19 Righetti of Righetti Glugoski, P.C., Gene Williams of Initiative Legal Group APC,
20 and Edwin Aiwazian of The Aiwazian Law Firm, and a copy of the Notice of
21 Removal will be filed with the Clerk of the Santa Clara Superior Court.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL

30.

Case No.

1    Dated:   April 7, 2011                    Respectfully submitted,

2

3                                              _____
                                               KEITH A. JACOBY
4                                              SCOTT M. LIDMAN
                                               HEATHER M. DAVIS
5                                              LITTLER MENDELSON
                                               A Professional Corporation
6                                              Attorneys for Defendants
                                               COMERICA BANK, COMERICA
7                                              INCORPORATED AND COMERICA
                                               MANAGEMENT COMPANY
8                                              (ERRONEOUSLY SUED AS
                                               COMERICA MANAGEMENT
9                                              COMPANY, INC.)

10   Firmwide:101059006.6 062020.1016

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310.553.0308

DEFENDANTS' NOTICE OF                          31.                        Case No.
REMOVAL

# EXHIBIT A

1    Matthew Righetti (SBN 121012)
     John Glugoski (SBN 191551)
2    Michael C. Righetti (SBN 258541)
     RIGHETTI • GLUGOSKI P.C.
3    456 Montgomery Street, Suite 1400
     San Francisco, California 94104
4    Tel: (415) 983-0900 / Fax: (415) 397-9005

5    Gene Williams (SBN 211390)
     Arnab Banerjee (SBN 252618)
6    INITIATIVE LEGAL GROUP APC
     1800 Century Park East, 2nd Floor
7    Los Angeles, California 90067
     Tel: (310) 556-5634 / Fax: (310) 861-9051

8    Edwin Aiwazian (SBN 232943)
     Ghazaleh Hekmatjah (SBN 259662)
9    Jill Parker (SBN 274230)
     Maria F. Nickerson (SBN 274225)
10   THE AIWAZIAN LAW FIRM
     410 West Arden Avenue, Suite 203
11   Glendale, California 91203
     Tel: (818) 265-1020 / Fax: (818) 265-1021

12

13   *Attorneys for* Plaintiff

14

15       SUPERIOR COURT OF THE STATE OF CALIFORNIA

16          FOR THE COUNTY OF SANTA CLARA

17

18   NANCY MATHEWS, individually, and on    Case No.: **111CV194781**
     behalf of other members of the general
19   public similarly situated;            CLASS ACTION COMPLAINT FOR
                               DAMAGES
20           Plaintiff,
                              (1)   Violation of California Labor Code
21       vs.                       § 1194 (Unpaid Minimum and
                                  Overtime Wages)
22   COMERICA BANK, a Texas corporation;
     COMERICA INCORPORATED, a         (2)   Violation of California Business and
23   Delaware corporation; and COMERICA       Professions Code §§ 17200, et seq.
     MANAGEMENT COMPANY, INC., a
24   Michigan corporation; and DOES 1 through
     100, inclusive,                      DEMAND FOR JURY TRIAL
25
26         Defendants.                  BY FAX

27

28

───────────────────────────────────────────
CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

(ENDORSED)
FILED
FEB 18 2011
DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY_____ DEPUTY
M. Rosales

COMES NOW, Plaintiff NANCY MATHEWS ("Plaintiff"), individually, and on behalf of members of the general public similarly situated, and alleges as follows:

## JURISDICTION AND VENUE

1. This class action is brought pursuant to the California Code of Civil Procedure section 382. The monetary damages and restitution sought by Plaintiff exceed the minimal jurisdiction limits of the Superior Court and will be established according to proof at trial. The amount in controversy for each class representative, including claims for compensatory damages, interest, and pro rata share of attorneys' fees, is less than $75,000.

2. This Court has jurisdiction over this action pursuant to the California Constitution, Article VI, Section 10, which grants the superior court "original jurisdiction in all other causes" except those given by statute to other courts. The statutes under which this action is brought do not specify any other basis for jurisdiction.

3. This Court has jurisdiction over all Defendants because, upon information and belief, each party is either a citizen of California, has sufficient minimum contacts in California, or otherwise intentionally avails itself of the California market so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

4. Venue is proper in this Court because, upon information and belief, Defendants maintain offices, have agents, and transact business in the County of San Francisco. Plaintiff resides in the State of California, County of Santa Clara and the majority of the acts and omissions alleged herein took place in the State of California, County of Santa Clara.

5. The total amount in controversy as a result of this lawsuit inclusive of attorneys' fees is less than $5,000,000.

///

1

## PARTIES

6.    Plaintiff is an individual residing in the County of Santa Clara, in the State of California.

7.    Defendant COMERICA BANK is a corporation organized and existing under the laws of the State of Texas, and transacts business throughout the State of California, including the County of Santa Clara.

8.    Defendant COMERICA INCORPORATED is a corporation organized and existing under the laws of the State of Delaware, and transacts business throughout the State of California, including the County of Santa Clara.

9.    Defendant COMERICA MANAGEMENT COMPANY, INC. ("CMCI") is a corporation organized and existing under the laws of the State of Michigan, and transacts business in the State of California, including the County of Santa Clara.

10.    CMCI is a subsidiary of COMERICA BANK, which is a subsidiary of COMERICA INCORPORATED.

11.    Although separate legal entities, COMERICA INCORPORATED, COMERICA BANK, and CMCI share COMERICA INCORPORATED's Department of Human Resources, as well as its information systems, technology, legal department and treasury.

12.    At all relevant times, COMERICA INCORPORATED, COMERICA BANK, and CMCI were jointly and severally the "employer" of Plaintiff and the other class members within the meaning of all applicable state laws and statutes and will hereinafter collectively be referred to as "Comerica."

13.    COMERICA INCORPORATED owns and operates approximately one-hundred (100) Comerica Banking Centers within the State of California, including the County of Santa Clara. The operation of the banking centers are grouped into the following four distinct geographic districts: "South Coast;" "Greater Los Angeles;" "San Francisco Bay Area;" and "Northern California." Each district has its own Regional Manager who is responsible for the operation of the banking centers in that

2

1   district. The Comerica Banking Centers that fall under COMERICA

2   INCORPORATED's "Northern California District" are located within the Counties of

3   Santa Clara, Santa Cruz, Monterey, Fresno, and El Dorado.

4       14.  Plaintiff is informed and believes, and thereon alleges, that each and all of

5   the acts and omissions alleged herein was performed by, or is attributable to

6   Defendants, each acting as the agent for the other, with legal authority to act on the

7   other's behalf. The acts of any and all Defendants were in accordance with, and

8   represent the official policy of, Defendants.

9       15.  At all times herein mentioned, Defendants, and each of them, ratified each

10  and every act or omission complained of herein. At all times herein mentioned,

11  Defendants, and each of them, aided and abetted the acts and omissions of each and all

12  the other Defendants in proximately causing the damages herein alleged.

13      16.  At all times herein relevant, Comerica and DOES 1 through 100, and each

14  of them, were the agents, partners, joint venturers, representatives, servants, employees,

15  successors-in-interest, co-conspirators and assigns, each of the other, and at all times

16  relevant hereto were acting within the course and scope of their authority as such

17  agents, partners, joint venturers, representatives, servants, employees, successors, co-

18  conspirators and assigns, and all acts or omissions alleged herein were duly committed

19  with the ratification, knowledge, permission, encouragement, authorization and consent

20  of each defendant designated herein.

21      17.  The true names and capacities, whether corporate, associate, individual or

22  otherwise, of defendants DOES 1 through 100, inclusive, are unknown to Plaintiff who

23  sues said defendants by such fictitious names. Plaintiff is informed and believes, and

24  based on that information and belief alleges, that each of the defendants designated as a

25  DOE is legally responsible for the events and happenings referred to in this Complaint,

26  and unlawfully caused the injuries and damages to Plaintiff as alleged in this

27  Complaint. Plaintiff will seek leave of court to amend this Complaint to show the true

28  names and capacities when the same have been ascertained.

3

18. Comerica and DOES 1 through 100 will hereinafter collectively be referred to as "Defendants."

19. Plaintiff further alleges that Defendants including the unknown defendants identified as DOES, directly or indirectly controlled or affected the working conditions, wages, working hours, and conditions of employment of Plaintiff and the other class members so as to make each of said Defendants employers and employers liable under the statutory provisions set forth herein.

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action on her own behalf and on behalf of all other members of the general public similarly situated and, thus, seeks class certification under Code of Civil Procedure section 382.

21. The proposed class is defined as follows:

All current and former California-based salaried "Assistant Banking Center Managers," or persons who held similar job titles and/or performed similar job duties, who worked at a Comerica Banking Center located within Defendant's "Northern California District" at any time during the period from November 3, 2005 to final judgment.[1]

22. Plaintiff reserves the right to establish subclasses as appropriate.

23. The class is ascertainable and there is a well-defined community of interest in the litigation:

a. Numerosity: The class members are so numerous that joinder of all class members is impracticable. The membership of the entire class is unknown to Plaintiff at this time; however, the class is estimated to be approximately forty (40) individuals and the identity of such membership is readily ascertainable by inspection

---

[1] Defendant has been on notice of the underlying factual allegations in this lawsuit since November 3, 2009, the filing date of *Cordova v. Comerica Bank, et al.*, Case No. BC425226. Accordingly, the class that Plaintiff seeks to represent, as set forth in the class definition, begins on November 3, 2005 (four years prior to the filing of the *Cordova* action).

4

of Defendants' employment records.

b. <u>Typicality</u>: Plaintiff's claims are typical of all other class members' as demonstrated herein. Plaintiff will fairly and adequately protect the interests of the other class members with whom he has a well-defined community of interest.

c. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of each class member, with whom he has a well-defined community of interest and typicality of claims, as demonstrated herein. Plaintiff has no interest that is antagonistic to the other class members. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred, and during the pendency of this action will continue to incur, costs and attorneys' fees, that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each class member.

d. <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of this litigation because individual joinder of all class members is impractical.

e. <u>Public Policy Considerations</u>: Certification of this lawsuit as a class action will advance public policy objectives. Employers of this great state violate employment and labor laws every day. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. However, class actions provide the class members who are not named in the complaint anonymity that allows for the vindication of their rights.

///

///

5

24.     There are common questions of law and fact as to the class members that predominate over questions affecting only individual members. The following common questions of law or fact, among others, exist as to the members of the class:

  a.     Whether Defendants' failure to pay wages, without abatement or reduction, in accordance with the California Labor Code, was willful;

  b.     Whether Defendants' California based salaried "Assistant Banking Center Managers," or persons who held similar job titles and/or performed similar job duties, were classified as "exempt" in violation of California law;

  c.     Whether Defendants required Plaintiff and the other class members to work over eight (8) hours per day and/or over forty (40) hours per week and failed to pay the legally required overtime compensation to Plaintiff and the other class members;

  d.     Whether Defendants deprived Plaintiff and the other class members of meal periods or required Plaintiff and the other class members to work during meal periods without compensation;

  e.     Whether Defendants deprived Plaintiff and the other class members of rest periods or required Plaintiff and the other class members to work during rest periods without compensation;

  f.     Whether Defendants failed to pay minimum wages to Plaintiff and the other class members;

  g.     Whether Defendants failed to pay all wages due to Plaintiff and the other class members within the required time upon their discharge or resignation;

  h.     Whether Defendants failed to timely pay all wages due to Plaintiff and the other class members during their employment;

///

6

i.     Whether Defendants complied with wage reporting as required by the California Labor Code; including, *inter alia*, section 226;

j.     Whether Defendants kept complete and accurate payroll records as required by the California Labor Code, including, *inter alia*, section 1174(d);

k.    Whether Defendants' conduct was willful or reckless;

l.     Whether Defendants engaged in unfair business practices in violation of California Business & Professions Code sections 17200, et seq.;

m.    The appropriate amount of damages, restitution, and/or monetary penalties resulting from Defendants' violation of California law; and

n.    Whether Plaintiff and the other class members are entitled to compensatory damages pursuant to the California Labor Code.

## GENERAL ALLEGATIONS

25.    At all relevant times set forth herein, Defendants employed Plaintiff and other persons as salaried "exempt" employees.

26.    Defendants, jointly and severally, employed Plaintiff as an "Assistant Banking Center Manager," which is an "exempt" salaried position, from in or around April 2007 until in or around November 2008 in a Comerica Banking Center located within Defendants' "Northern California District." More specifically, the banking center was located within the County of Santa Clara.

27.    Defendants hired Plaintiff, misclassified her as an "exempt" employee, and paid her on a salary basis, without any compensation for overtime hours worked, missed meal periods or rest breaks.

28.    Defendants had the authority to hire and terminate Plaintiff and the other class members; to set work rules and conditions governing Plaintiff's and the other class members' employment; and to supervise their daily employment activities.

7

29.    Defendants exercised sufficient authority over the terms and conditions of Plaintiff's and the other class members' employment for them to be joint employers of Plaintiff and the other class members.

30.    Defendants directly hired and paid wages and benefits to Plaintiff and the other class members.

31.    Defendants continue to employ "exempt" or salary paid employees within the State of California.

32.    Plaintiff is informed and believes, and based thereon alleges, that at all times herein relevant, Defendants were advised by skilled lawyers and other professionals, employees, advisors, and consultants highly knowledgeable about California wage laws, employment and personnel practices.

33.    Plaintiff is informed and believes, and based thereon alleges, that at all times herein relevant, without any justification, Defendants ignored the employment and personnel policy changes proposed by skilled lawyers and other professionals, employees, advisors, and consultants highly knowledgeable about California wage laws, employment and personnel practices.

34.    Plaintiff and the other class members worked over eight (8) hours in a day, and/or forty (40) hours in a week during their employment with Defendants.

35.    Plaintiff is informed and believes, and based thereon alleges, that Defendants engaged in a uniform policy and systematic scheme of wage abuse against their "Assistant Banking Center Managers." This scheme involved, *inter alia*, misclassifying these position as "exempt" for purposes of the payment of overtime compensation when, in fact, they were "non-exempt" employees according to California law.

36.    Plaintiff is informed and believes, and based thereon alleges, that Defendants knew or should have known that Plaintiff and the other class members were entitled to receive certain wages for overtime compensation and that they were not receiving wages for overtime compensation.

8

1    37.    Plaintiff is informed and believes, and based thereon alleges, that
2  Defendants failed to provide Plaintiff and the other class members the required rest and
3  meal periods during the relevant time period as required under the Industrial Welfare
4  Commission Wage Orders and thus they are entitled to any and all applicable penalties.
5    38.    Plaintiff is informed and believes, and based thereon alleges, that
6  Defendants knew or should have known that Plaintiff and the other class members were
7  entitled to receive all meal periods or payment of one additional hour of pay at
8  Plaintiff's and the other class member's regular rate of pay when a meal period was
9  missed, and they did not receive all meal periods or payment of one additional hour of
10  pay at Plaintiff's and the other class member's regular rate of pay when a meal period
11  was missed.
12    39.    Plaintiff is informed and believes, and based thereon alleges, that
13  Defendants knew or should have known that Plaintiff and the other class members were
14  entitled to receive all rest periods or payment of one additional hour of pay at Plaintiff's
15  regular rate of pay when a rest period was missed, and they did not receive all rest
16  periods or payment of one additional hour of pay at Plaintiff's and the other class
17  members' regular rate of pay when a rest period was missed.
18    40.    Plaintiff is informed and believes, and based thereon alleges, that
19  Defendants knew or should have known that Plaintiff and the other class members were
20  entitled to receive at least minimum wages for compensation and that they were not
21  receiving at least minimum wages for all hours worked.
22    41.    Plaintiff is informed and believes, and based thereon alleges, that
23  Defendants knew or should have known that Plaintiff and the other class members were
24  entitled to receive all wages owed to them upon discharge or resignation, including
25  overtime and minimum wages and meal and rest period premiums, and they did not, in
26  fact, receive all such wages owed to them at the time of their discharge.
27  ///
28  ///

9

42.     Plaintiff is informed and believes, and based thereon alleges, that Defendants knew or should have known that Plaintiff and the other class members were entitled to receive all wages owed to them during their employment. Plaintiff and the other class members did not receive payment of all wages, including overtime and minimum wages and meal and rest period premiums, within any time permissible under California Labor Code section 204.

43.     Plaintiff is informed and believes, and based thereon alleges, that Defendants knew or should have known that Plaintiff and the other class members were entitled to receive complete and accurate wage statements in accordance with California law, but, in fact, they did not receive complete and accurate wage statements from Defendants. The deficiencies included, *inter alia*, the failure to include the total number of hours worked by Plaintiff and the other class members.

44.     Plaintiff is informed and believes, and based thereon alleges, that Defendants knew or should have known that Defendants had to keep complete and accurate payroll records for Plaintiff and the other class members in accordance with California law, but, in fact, did not keep complete and accurate payroll records.

45.     Plaintiff is informed and believes, and based thereon alleges, that Defendants knew or should have known that they had a duty to compensate Plaintiff and the other class members pursuant to California law, and that Defendants had the financial ability to pay such compensation, but willfully, knowingly, and intentionally failed to do so, and falsely represented to Plaintiff and the other class members that they were properly denied wages, all in order to increase Defendants' profits.

46.     At all material times set forth herein, Defendants regularly and consistently failed to pay overtime wages to Plaintiff and the other class members. Plaintiff and the other class members were required to work more than eight (8) hours per day and/or forty (40) hours per week without overtime compensation.

///

///

10

47. At all material times set forth herein, Defendants regularly and consistently failed to provide uninterrupted meal and rest periods to Plaintiff and the other class members.

48. At all material times set forth herein, Defendants regularly and consistently failed to pay Plaintiff and the other class members at least minimum wages for all hours worked.

49. At all material times set forth herein, Defendants regularly and consistently failed to pay Plaintiff and the other class members all wages owed to them upon discharge or resignation.

50. At all material times set forth herein, Defendants regularly and consistently failed to pay Plaintiff and the other class members wages within any time permissible under California law, including, *inter alia*, California Labor Code section 204.

51. At all material times set forth herein, Defendants regularly and consistently failed to provide complete and accurate wage statements to Plaintiff and the other class members.

52. At all material times set forth herein, Defendants regularly and consistently failed to keep complete and accurate payroll records for Plaintiff and the other class members.

53. At all material times set forth herein, Defendants regularly and consistently failed to properly compensate Plaintiff and the other class members pursuant to California law in order to increase Defendants' profits.

54. California Labor Code section 218 states that noting in Article 1 of the Labor Code shall limit the right of any wage claimant to "sue directly . . . for any wages or penalty due to him [or her] under this article."

///

///

///

11

## FIRST CAUSE OF ACTION

### Violation of California Labor Code §§ 510 and 1198

### (Against all DEFENDANTS and DOES 1 through 100)

55.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 54, and each and every part thereof with the same force and effect as though fully set forth herein.

56.   At all relevant times, California Labor Code sections 1194, 1197, and 1197.1 provided that the minimum wage for employees fixed by the Industrial Welfare Commission is the minimum wage to be paid to employees, and the payment of a lesser wage than the minimum so fixed is unlawful.

57.   California Labor Code section 1194 and 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order further provided that it was unlawful to employ persons without compensating them at a rate of pay time-and-one-half or two-times that person's regular rate of pay, depending on the number of hours worked by the person on a daily or weekly basis.

58.   Specifically, the applicable IWC Wage Order provides that Defendants are and were required to pay Plaintiff and the other class members employed by Defendants, and working more than eight (8) hours in a day or more than forty (40) hours in a workweek, at a rate of time-and-one-half for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek.

59.   California Labor Code section 510 codifies the right to overtime compensation at one-and-one-half times the regular hourly rate for hours worked in excess of eight (8) hours in a day or forty (40) hours in a week or for the first eight (8) hours worked on the seventh day of work.

60.   During the relevant time period, Plaintiff and the other class members were not paid for all the hours they worked.

61.   During the relevant time period, Plaintiff and the other class members were not paid at least minimum wage compensation for all hours worked.

12

62. During the relevant time period, Plaintiff and the other class members were not paid overtime compensation for the hours they worked in excess of eight (8) hours in a day and/or forty (40) hours in a week.

63. During the relevant time period, Defendants willfully failed to pay minimum wages to Plaintiff and the other class members as required, pursuant to California Labor Code sections 1194, 1197, and 1197.1.

64. During the relevant time period, Defendants willfully failed to pay all overtime wages owed to Plaintiff and the other class members as required, pursuant to California Labor Code sections 510, 1194 and 1198.

65. Defendants' failure to pay Plaintiff and the other class members the minimum wage as required violates California Labor Code sections 1194, 1197, and 1197.1. Pursuant to those sections, Plaintiff and the other class members are entitled to recover the unpaid balance of their minimum wage compensation as well as interest, costs, and attorneys' fees, and liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

66. Defendants' failure to pay Plaintiff and the other class members the unpaid balance of overtime compensation, as required by California laws, violates the provisions of California Labor Code sections 510, 1194 and 1198, and is therefore unlawful.

67. Pursuant to California Labor Code section 1194, Plaintiff and the other class members are entitled to recover their unpaid minimum wages and overtime compensation, as well as interest, costs, and attorneys' fees.

68. Pursuant to California Labor Code section 1197.1, Plaintiff and the other class members are entitled to recover a penalty of one hundred dollars ($100) for the initial failure to timely pay each employee minimum wages, and two hundred and fifty dollars ($250) for each subsequent failure to pay each employee minimum wages.

///

///

13

69.     Pursuant to California Labor Code section 1194.2, Plaintiff and the other
class members are entitled to recover liquidated damages in an amount equal to the
wages unlawfully unpaid and interest thereon.

## SECOND CAUSE OF ACTION

### Violation of California Business & Professions Code §§ 17200, et seq.

### (Against all DEFENDANTS and DOES 1 through 100)

70.     Plaintiff incorporates by reference the allegations contained in paragraphs
1 through 69, and each and every part thereof with the same force and effect as though
fully set forth herein.

71.     Defendants' conduct, as alleged in this Complaint, has been, and
continues to be, unfair, unlawful and harmful to Plaintiff and the other class members,
and Defendants' competitors.  Accordingly, Plaintiff and the other class members seek
to enforce important rights affecting the public interest within the meaning of Code of
Civil Procedure section 1021.5.

72.     Defendants' activities as alleged herein are violations of California law,
and constitute unlawful business acts and practices in violation of California Business
& Professions Code sections 17200, et seq.

73.     A violation of California Business & Professions Code sections 17200,
et seq. may be predicated on the violation of any state or federal law.  In this instant
case, Defendants' policies and practices of requiring employees, including Plaintiff and
the other class members, to work overtime without paying them proper compensation
violate California Labor Code sections 510 and 1198.  Additionally, Defendants'
policies and practices of requiring employees, including Plaintiff and the other class
members, to work through their meal and rest periods without paying them proper
compensation violate California Labor Code sections 226.7 and 512(a).  Moreover,
Defendants' policies and practices of failing to timely pay wages to Plaintiff and the
other class members violate California Labor Code sections 201, 202, 203, and 204.
Defendants also violated California Labor Code sections 226(a), and 1174(d).

14

### Failure to Pay Overtime

74.     Defendants' failure to pay overtime in violation of the Wage Orders and California Labor Code sections 510 and 1198, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code sections 17200, et seq.

### Failing to Provide Meal Periods

75.     Defendants' failure to provide legally required meal periods in violation of the Wage Orders and California Labor Code sections 226.7 and 512(a), as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code sections 17200, et seq.

### Failure to Provide Rest Periods

76.     Defendants' failure to provide legally required rest periods in violation of the Wage Orders and California Labor Code section 226.7, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code sections 17200, et seq.

### Failure to Pay Minimum Wages

77.     Defendants' failure to pay minimum wages in violation of the Wage Orders and California Labor Code sections 1194, 1197 and 1197.1, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code sections 17200, et seq.

### Failure to Timely Pay Wages Upon Termination

78.     Defendants' failure to timely pay wages upon termination in violation of California Labor Code sections 201 and 202, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code sections 17200, et seq.

### Failure to Timely Pay Wages During Employment

79.     Defendants' failure to timely pay wages during employment in violation of California Labor Code section 204, as alleged above, constitutes unlawful and/or

15

1  unfair activity prohibited by California Business & Professions Code sections

2  17200, et seq.

### Failure to Provide Compliant Wage Statements

4      80.    Defendants' failure to provide compliant wage statements in violation of

5  California Labor Code section 226(a), as alleged above, constitutes unlawful and/or

6  unfair activity prohibited by California Business & Professions Code sections

7  17200, et seq.

### Failure to Keep Complete and Accurate Payroll Records

9      81.    Defendants' failure to keep complete and accurate payroll records in

10  violation of California Labor Code section 1174(d), as alleged above, constitutes

11  unlawful and/or unfair activity prohibited by California Business & Professions Code

12  sections 17200, et seq.

### Failure to Reimburse Necessary Business-Related Expenses and Costs

14      82.    Defendants' failure to reimburse necessary business-related expenses and

15  costs in violation of California Labor Code sections 2800 and 2802, as alleged above,

16  constitutes unlawful and/or unfair activity prohibited by California Business &

17  Professions Code sections 17200, et seq.

18      83.    As a result of the herein described violations of California law,

19  Defendants unlawfully gained an unfair advantage over other businesses.

20      84.    Plaintiff and the other class members have been personally injured and

21  continue to be injured by Defendants' unlawful business acts and practices as alleged

22  herein, including, but not necessarily limited to, the loss of money and/or property.

23      85.    Pursuant to California Business & Professions Code sections 17200,

24  et seq., Plaintiff and the other class members are entitled to restitution of the wages and

25  other monies wrongfully withheld and retained by Defendants pursuant to California

26  Labor Code sections 510 and 1198.

27  ///

28  ///

16

86.     Pursuant to California Business & Professions Code sections 17200, et seq., Plaintiff and the other class members are entitled to restitution of the wages withheld and retained by Defendants during the period from November 3, 2005 until final judgment; an award of attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable laws; and an award of costs.

## DEMAND FOR JURY TRIAL

Plaintiff, individually, and on behalf of other members of the general public similarly situated, requests a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of members of the general public similarly situated, prays for relief and judgment against Defendants, jointly and severally, as follows:

### Class Certification

1.     That this action be certified as a class action;

2.     That Plaintiff be appointed as the representative of the Class;

3.     That counsel for Plaintiff be appointed as Class Counsel; and

4.     That Defendants provide to Class Counsel, immediately upon its appointment, the names and most current contact information (address and telephone numbers) of all class members.

### As to the First Cause of Action

5.     That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 510, 1194, 1197, 1197.1, 1198 and applicable IWC Wage Orders by willfully failing to pay all minimum and overtime wages due to Plaintiff and the other class members;

6.     For general unpaid wages, unpaid wages at overtime wage rates and such general and special damages as may be appropriate;

7.     For pre-judgment interest on any unpaid minimum wages and overtime compensation commencing from the date such amounts were due;

17

8.    For statutory wage penalties pursuant to California Labor Code section 1197.1 for Plaintiff and the other class members in the amount as may be established according to proof at trial;

9.    For liquidated damages pursuant to California Labor Code section 1194.2;

10.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Labor Code section 1194(a);

11.    For civil penalties pursuant to California Labor Code sections 2699(a), (f) and (g) plus costs and attorneys' fees for violation of California Labor Code sections 510 1194, 1197, 1197.1 and 1198; and

12.    For such other and further relief as the Court may deem equitable and appropriate.

### As to the Second Cause of Action

13.    That the Court declare, adjudge and decree that Defendants violated California Business and Professions Code sections 17200, et seq. by failing to provide Plaintiff and the other class members all overtime compensation due to them, failing to provide all meal and rest periods to Plaintiff and the other class members, failing to pay for all missed meal and rest periods to Plaintiff and the other class members, failing to pay all minimum wages due to Plaintiff and the other class members, failing to pay Plaintiff's and other class members' wages timely as required by California Labor Code sections 201, 202, and 204, failing to provide Plaintiff and other class members with complete and accurate wage statements, and failing to keep complete and accurate payroll records. For all actual, consequential, and incidental losses and damages, according to proof;

14.    For restitution of unpaid wages and other monies wrongfully withheld and retained by Defendants to Plaintiff and the other class members and prejudgment interest from the day such amount were due and payable;

///

///

18

15. For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully withheld acquired by Defendants as a result of violations of California Business & Professions Code sections 17200, et seq.;

16. For reasonable attorneys' fees and costs of suit incurred herein that Plaintiff and the other class members are entitled to recover under California Code of Civil Procedure section 1021.5; and

17. For such other and further relief as the Court may deem equitable and appropriate.

DATED: February 17, 2011                    THE AIWAZIAN LAW FIRM


By: _Edwin Aiwazian_____
Edwin Aiwazian
*Attorneys for* Plaintiff

19

3/9/11 2:40p

# SUMMONS
## (CITACION JUDICIAL)



**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

COMERICA BANK, a Texas corporation;
(See form SUM-200(A) attached)

FILED
FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

(ENDORSED)
FEB 18 2011
DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
By _____ DEPUTY

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

NANCY MATHEWS, individually, and on behalf of other members of
the general public similarly situated;

Ms. Fessales

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* Superior Court of California<br>County of Santa Clara – Downtown Superior Court<br>191 North First Street, San Jose, California 95113 | CASE NUMBER:<br>*(Número del Caso):*<br>1 1 1 C V 1 9 4 7 8 1 |

The name, address, and telephone number of plaintiffs attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Edwin Aiwazian, The Aiwazian Law Firm, 410 West Arden Avenue, Suite 203, Glendale, CA 91203
Telephone No. (818) 265-1020

DATE: **FEB 18 2011**
*(Fecha)*                        Clerk, by __Ms. Fessales__, Deputy
                                 *(Secretario)*              *(Adjunto)*

DAVID H. YAMASAKI
Chief Executive Officer/Clerk

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☒ on behalf of (specify): COMERICA INCORPORATED,
   a DELAWARE CORPORATION
   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☐ by personal delivery on (date):

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Mathews vs. Comerica Bank, et al | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

COMERICA INCORPORATED, a Delaware Corporation; and COMERICA MANAGEMENT COMPANY, INC., a Michigan corporation; and DOES 1 through 100, inclusive.

Page ___1___ of ___1___

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

ATTACHMENT CV-5012

# CIVIL LAWSUIT NOTICE

*Superior Court of California, County of Santa Clara*
*191 N. First St., San Jose, CA 95113*

CASE NUMBER: 111CV194781

## PLEASE READ THIS ENTIRE FORM

*PLAINTIFF* (the person suing): Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint, Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

*DEFENDANT* (The person sued): You must do each of the following to protect your rights:

1. You must file a written response to the *Complaint*, using the proper legal form or format, in the Clerk's Office of the Court, within 30 days of the date you were served with the *Summons* and *Complaint*;
2. You must serve by mail a copy of your written response on the Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

**Warning:** If you, as the Defendant, do not follow these instructions,
you may automatically lose this case.

*RULES AND FORMS:* You must follow the California Rules of Court and the Superior Court of California, County of Santa Clara Local Civil Rules and use proper forms. You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), www.scselfservice.org (Select "Civil") or from:

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: http://www.sccsuperiorcourt.org/civil/rule1toc.htm

*CASE MANAGEMENT CONFERENCE (CMC):* You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

*You or your attorney must appear at the CMC. You may ask to appear by telephone – see Local Civil Rule 8.*

Your Case Management Judge is: <u>Honorable Kevin McKenney</u>   Department: <u>20</u>

The 1st CMC is scheduled for: (Completed by Clerk of Court)
Date: <u>JUL 12 2011</u>   Time: <u>2:15 PM</u> in Department: <u>20</u>

The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed)
Date: _____   Time: _____ in Department: _____

*ALTERNATIVE DISPUTE RESOLUTION (ADR):* If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

Form CV-5012 REV 7/01/08                    CIVIL LAWSUIT NOTICE                    Page 1 of 1

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Edwin Aiwazian (SBN 232943)<br>THE AIWAZIAN LAW FIRM<br>410 West Arden Avenue, Suite 203<br>Glendale, California 91203<br>TELEPHONE NO.: (818) 265-1020   FAX NO.: (818) 265-1021<br>ATTORNEY FOR *(Name)*: Plaintiff Nancy Matthews | **(ENDORSED)**<br>**FILED**<br>FEB 18 2011<br>DAVID H. YAMASAKI<br>Chief Executive Officer/Clerk<br>Superior Court of CA County of Santa Clara<br>BY S. A. Rosa     DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara
STREET ADDRESS: 191 North First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose 95113
BRANCH NAME: Downtown Superior Court

CASE NAME:
Mathews vs. Comerica Bank, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 1 1 0 V 1 9 4 7 6 1 |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter | [ ] Joinder<br>Filed with first appearance by defendant<br>*(Cal. Rules of Court, rule 3.402)*  DEPT: | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | *(Cal. Rules of Court, rules 3.400–3.403)* |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [✓] Other employment (15) | [ ] Other judicial review (39) | |

**2.** This case [ ] is [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:

a. [ ] Large number of separately represented parties
b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [ ] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

**3.** Remedies sought *(check all that apply)*: a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
**4.** Number of causes of action *(specify)*: 2 .
**5.** This case [✓] is [ ] is not   a class action suit.
**6.** If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: February 17, 2011
Edwin Aiwazian
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). *(Cal. Rules of Court, rule 3.220.)* Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

**BY FAX**

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition



# SANTA CLARA COUNTY SUPERIOR COURT
## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION SHEET

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

### What is ADR?

ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

### What are the advantages of choosing ADR instead of litigation?

ADR can have a number of advantages over litigation:

- **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

- **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

- **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

- **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

- **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

### What are the main forms of ADR offered by the Court?

**Mediation** is an informal, confidential, flexible and non-binding process in the mediator helps the parties to understand the interests of everyone involved, and their practical and legal choices. The mediator helps the parties to communicate better, explore legal and practical settlement options, and reach an acceptable solution of the problem. The mediator does not decide the solution to the dispute; the parties do.

Mediation may be appropriate when:
- The parties want a non-adversary procedure
- The parties have a continuing business or personal relationship
- Communication problems are interfering with a resolution
- There is an emotional element involved
- The parties are interested in an injunction, consent decree, or other form of equitable relief

**Neutral evaluation**, sometimes called "Early Neutral Evaluation" or "ENE", is an informal process in which the evaluator, an experienced neutral lawyer, hears a compact presentation of both sides of the case, gives a non-binding assessment of the strengths and weaknesses on each side, and predicts the likely outcome. The evaluator can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
- The parties are far apart in their view of the law or value of the case
- The case involves a technical issue in which the evaluator has expertise
- Case planning assistance would be helpful and would save legal fees and costs
- The parties are interested in an injunction, consent decree, or other form of equitable relief

*-over-*

**Arbitration** is a less formal process than a trial, with no jury. The arbitrator hears the evidence and arguments of the parties and then makes a written decision. The parties can agree to binding or non-binding arbitration. In binding arbitration, the arbitrator's decision is final and completely resolves the case, without the opportunity for appeal. In non-binding arbitration, the arbitrator's decision could resolve the case, without the opportunity for appeal, unless a party timely rejects the arbitrator's decision within 30 days and requests a trial. Private arbitrators are allowed to charge for their time.

Arbitration may be appropriate when:

- The action is for personal injury, property damage, or breach of contract
- Only monetary damages are sought
- Witness testimony, under oath, needs to be evaluated
- An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

**Civil Judge ADR** allows parties to have a mediation or settlement conference with an experienced judge of the Superior Court. Mediation is an informal, confidential, flexible and non-binding process in which the judge helps the parties to understand the interests of everyone involved, and their practical and legal choices. A settlement conference is an informal process in which the judge meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations. The request for mediation or settlement conference may be made promptly by stipulation (agreement) upon the filing of the Civil complaint and the answer. There is no charge for this service.

Civil Judge ADR may be appropriate when:

- The parties have complex facts to review
- The case involves multiple parties and problems
- The courthouse surroundings would he helpful to the settlement process

**Special masters and referees** are neutral parties who may be appointed by the court to obtain information or to make specific fact findings that may lead to a resolution of a dispute.
Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

**Settlement conferences** are informal processes in which the neutral (a judge or an experienced attorney) meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.
Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

*What kind of disputes can be resolved by ADR?*

Although some disputes must go to court, almost any dispute can be resolved through ADR. This includes disputes involving business matters; civil rights; collections; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; fraud; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; sports; trade secret; and wrongful death, among other matters.

*Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, information about ADR procedures, or answers to other questions about ADR?*

*Contact:*
Santa Clara County Superior Court
Coordinator
ADR Administrator
408-882-2530

Santa Clara County DRPA
408-792-2784

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET
CIVIL DIVISION**